

SAUL
EWING
Attorneys at Law
A Delaware LLP

Michael R. Robinson

Phone: (302) 421-6895

Fax: (302) 421-5888

MRobinson@saul.com

www.saul.com

June 12, 2008

**VIA E-FILE & HAND DELIVERY**
The Honorable Gregory M. Sleet
United States District Court
844 North King Street
Wilmington, DE 19801

> Re:  *Coppedge v. Yurkie*, C.A. No. 1:07-cv-846-GMS-MPT
> *Coppedge v. City of Philadelphia*, C.A. No. 07-684-GMS-MPT
> *Coppedge v. Leatherman*, C.A. No. 07-763-GMS-MPT

Dear Chief Judge Sleet:

I write on behalf of the defendants in the above-captioned matters (collectively "Defendants") in response to several Affidavits and other papers provided by plaintiff James Coppedge. Specifically, Mr. Coppedge has filed a Certification of Non-Response, filed in C.A. No. 07-684 (D.I. 26), an Affidavit to Overturn Denied Default Judgment and a Certification of Non-Response, filed in 7-763 (D.I. 25 and D.I. 26, respectively), and a Certification of Non-Response filed in C.A. No. 07-846 (D.I. 17).

These filings reflect once again Mr. Coppedge's continued pattern of abuse of the judicial process and should be disregarded by the Court.[1]  See Letter to the Court of March 18, 2008 in C.A. No. 07-684 (D.I. 24), in C.A. No. 7-763 (D.I. 23), and in C.A. No. 07-846 (D.I. 13). Mr. Coppedge again has failed to heed the Court's warning late last year that until the Court rules in his favor, such "repetitive motions or petitions [to enter judgment] will not be considered and will be summarily denied." Order dated 12/11/2007, C.A. No. 07-684 (D.I. 11). As there are pending meritorious motions to dismiss in each of these matters, the Court has obviously not ruled in Mr. Coppedge's favor. Thus, respectfully, Mr. Coppedge's continued filings in the referenced cases should be disregarded by the Court and "summarily denied."

---

[1]   For some unknown reason, Mr. Coppedge filed my letter of March 18, 2008 with a stamp indicating that it was being "accepted for value," in the three cases. See C.A. No. 07-684 (D.I. 25), in C.A. No. 7-763 (D.I. 24), and in C.A. No. 07-846 (D.I. 14). It is unclear what Mr. Coppedge meant by that statement. Thus, Defendants are unable to respond to it. To the extent that Mr. Coppedge may be asserting some sort of contractual relationship, Defendants expressly deny that such relationship exists between Mr. Coppedge and defendants, joint or severally.

P.O. Box 1266 ♦ Wilmington, DE 19899-1266 ♦ Phone: (302) 421-6800 ♦ Fax: (302) 421-6813
Courier Address: 222 Delaware Avenue, Suite 1200 ♦ Wilmington, DE 19801-1611

BALTIMORE   CHESTERBROOK   HARRISBURG   NEWARK   PHILADELPHIA   PRINCETON   WASHINGTON   WILMINGTON
559613.2 6/12/08                          A DELAWARE LIMITED LIABILITY PARTNERSHIP

The Honorable Gregory M. Sleet
United States District Court
June 12, 2008
Page 2

As Mr. Coppedge has not discontinued his harassment of the City of Philadelphia (the "City"), its employees, and now its legal counsel, Defendants respectfully request that the Court impose sanctions against Mr. Coppedge, or, at the very least, discontinue receiving filings from him. Courts faced with similar frivolous lawsuits have found that sanctions and an injunction of filings are proper remedies to address the sort of abuse of process Mr. Coppedge has engaged in. See, e.g., United States v. Kettler, 934 F.2d 326 (10th Cir. 1991) (imposing restrictions on future filings without express permission); United States v. McKinley, 53 F.3d 1170 (10th Cir. 1995) (granting request for sanctions and imposing injunction against future filings without express permission); United States v. Barker, 182 F.R.D. 661 (S.D. Ga. 1998) (same); United States v. Barker, 19 F.Supp.2d 1380 (S.D. Ga. 1998) (enjoining future filings without express permission and enjoining party from filing commercial liens based on failure to respond to a document against federal employees); United States v. Andra, 923 F.Supp. 157 (D. Id. 1996) (same); Stoecklin v. United States, 1997 WL 1039238 (M.D. Fla. 1997) (imposing sanctions for continued filing of frivolous motions). True and correct copies of these opinions are attached alphabetically at Exhibit A.

The rationale upon which courts have imposed sanctions and enjoined future filings in similar situations is equally applicable here. This is especially so in light of Mr. Coppedge's recent targeting of Saul Ewing with yet another frivolous and improper lawsuit instead of waiting for the disposition of the pending motions in the referenced cases. See Coppedge v. Saul Ewing, C.A. No. 08-289. Mr. Coppedge's mercenary use of litigation as a tool to intimidate and harass the City, its employees, and now their legal counsel, for doing their jobs is exactly the sort of behavior courts around the country have refused to condone and consider sanctionable. Like those courts, this Court should not allow (and, thereby, further encourage) Mr. Coppedge's continued excessive, inappropriate actions and intentional waste of resources by both this Court and Defendants.

As always, counsel remains available at the Court's convenience if Your Honor has any questions.

Respectfully,

Michael R. Robinson
(Del. Bar No. 4452)

cc:    Mr. James Coppedge
       (Via First Class U.S. Mail)

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.

Page 1

Not Reported in F.Supp., 1997 WL 1039238 (M.D.Fla.)

**(Cite as: Not Reported in F.Supp., 1997 WL 1039238 (M.D.Fla.))**

**H**Stoecklin v. U.S.

M.D.Fla.,1997.

Only the Westlaw citation is currently available.

United States District Court, M.D. Florida.

Kenneth A. **STOECKLIN**, Plaintiff,

v.

UNITED STATES OF AMERICA, Defendant.

**No. 89-182-CIV-OC-16.**

Dec. 8, 1997.

Kenneth A. **Stoecklin**, Crystal River, FL, plaintiff, pro se.

Robert J. Higgins and Ralph Lee, United States Attorneys Office, Middle District of Florida, Jacksonville, FL, for defendant USA.

Bruce T. Russell, **U.S.** Dept. of Justice, Tax Division, Ben Franklin Station, Washington, D.C., for defendant IRS and USA.

*ORDER ON FAILURE TO SHOW CAUSE*

MOORE, J.

*1 This cause comes before the Court on this Court's Order to Show Cause (Docket # 298) and *prose* party Kenneth **Stoecklin's** documents titled "RESPONSE OF **Stoecklin** TO COURT'S ORDER TO SHOW CAUSE" (Docket # 300)("Response") and "Judicial Notice" (Document # 299). The Order to Show Cause directed **Stoecklin** to show why he should not be ordered to pay to the Office of the United States Attorney $500.00 in attorney's fees for filing 69 (now 70) frivolous and harassing motions.

l. Facts

As an in depth recitation of the facts would be duplicative, this Court merely refers back to the statement of facts contained in this Court's Order to Show Cause (Docket # 298). It is helpful to note, however, that in **Stoecklin's** response to the Order to Show Cause he again filed a frivolous document. **Stoecklin** makes reference in the preamble of his Response to his name being in capital letters in a prior order issued by this Court and then **Stoecklin** makes an incorrect reference to this form of using all capital letters as being proper only in reference to corporate

entities. This is an incorrect statement of the law and **Stoecklin's** reference to it in his Response and in his filing of the document titled "Judicial Notice" is illustrative of **Stoecklin's** continued harassing and frivolous behavior.

II. Discussion of **Stoecklin's** Response

Rule 11(a) requires that "every pleading, written motion, and other paper shall be signed" by the pro se party submitting it. Rule 11(b) states, in pertinent part:

By presenting to the court ... a pleading, written motion, or other paper, an ... unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,-

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

*2 If, after reasonable notice and an opportunity to respond, the Court determines that a party has violated one of the prohibitions of Rule 11(b), then the Court is authorized by Rule 11(c) to impose an appropriate sanction upon the party who has violated said section. Said sanctions can take the form of monetary fines or nonmonetary directives. *See*FRCP 11(c)(2)(A)-(B).Rule 11 allows this Court the leeway to create an appropriate sanction.

**Stoecklin's** response to this Court's Order to Show Cause fails to demonstrate why he should not be sanctioned under Rule 11. Rule 11 requires that after reasonable inquiry the filing party believes that a non-frivolous basis for their argument/assertion exists. **Stoecklin** has admitted in his filings that he has access to a law library and although this Court has never expected **Stoecklin** to file documents with the same level of acumen as a licensed attorney it does expect,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 1039238 (M.D.Fla.)
**(Cite as: Not Reported in F.Supp., 1997 WL 1039238 (M.D.Fla.))**

as Rule 11 requires, that his filings be reasonable.
**Stoecklin's** filings, even read in a light most favorable
to him, fail to be reasonable.

III. Discussion of Appropriate Sanctions

This circuit has discussed in dicta the amount of a fine
that may be imposed under Rule 11 and it has also
discussed the levy of attorney's fees against a
rule-violating party. *United States v. Milam,* 855 F.2d
739, 742-43 (11th Cir.1988). The circuit suggested in
Milam that in most cases a levy of attorney's fees is
appropriate without an economic analysis of the fined
party's resources. The circuit also suggested that in the
case of a penalty, it may be appropriate to analyze the
resources of the fined party prior to fine levy.
Furthermore, the Court would note that not only may a
party's opponent file a motion for sanctions, see FRCP
11(c)(1)(A), but also the Court may, on its own
motion, order a party to show cause why he should not
be sanctioned for particularly frivolous or harassing
litigative behavior, see FRCP 11(c)(1)(B). As this
Court is simply awarding attorney's fees to the United
States Attorney's office, it is not necessary to discuss
**Stoecklin's** economic position in relation to the
payment of attorney's fees.

IV. Imposition of Sanctions

This Court finds that **Stoecklin** has failed to show
good cause why he should not be ordered to pay
attorney's fees to the Office of the United States
Attorney in compensation for the wasted attorney's
hours that he has caused.

Upon consideration thereof, it is hereby ORDERED
that:

1. The Clerk shall enter judgment against **Stoecklin**
and in favor of the United States Attorney's Office in
the amount of $500.00.

M.D.Fla.,1997.
Stoecklin v. U.S.
Not Reported in F.Supp., 1997 WL 1039238
(M.D.Fla.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

923 F.Supp. 157
923 F.Supp. 157, 77 A.F.T.R.2d 96-1033, 96-2 USTC P 50,435, 30 UCC Rep.Serv.2d 880
**(Cite as: 923 F.Supp. 157)**

**C**U.S. v. Andra
D.Idaho,1996.

United States District Court,D. Idaho.
UNITED STATES of America, Plaintiff,
v.
Marc D. ANDRA and Cheryl Andra, Defendants.
**No. CV 94-0376-N-EJL.**

Feb. 5, 1996.

Government filed complaint for declaratory relief and permanent injunction against tax protesters who filed liens in excess of $17,000,000 against real property of two Internal Revenue Service (IRS) special agents. On government's motion for judgment on pleadings or for summary judgment, the District Court, Lodge, Chief Judge, held that: (1) service could not be refused, and (2) purported liens were null, void, and of no legal effect.

Motion granted.

West Headnotes

**|1| Federal Civil Procedure 170A ☞2470.1**

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)1 In General
                170Ak2465 Matters Affecting Right to Judgment
                    170Ak2470.1 k. Materiality and Genuineness of Fact Issue. Most Cited Cases
Issue is "material" for purposes of summary judgment if it affects outcome of litigation. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

**|2| Federal Civil Procedure 170A ☞2470.1**

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)1 In General
                170Ak2465 Matters Affecting Right to Judgment
                    170Ak2470.1 k. Materiality and Genuineness of Fact Issue. Most Cited Cases
On motion for summary judgment, before issue may be considered "genuine," it must be established by sufficient evidence supporting claimed factual dispute to require jury or judge to resolve parties' differing versions of truth at trial. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

**|3| Federal Civil Procedure 170A ☞2543**

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)3 Proceedings
                170Ak2542 Evidence
                    170Ak2543 k. Presumptions. Most Cited Cases
On motion for summary judgment, court must view all evidence in light most favorable to nonmoving party. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

**|4| Internal Revenue 220 ☞3020**

220 Internal Revenue
    220I Nature and Extent of Taxing Power in General
        220I(C) Validity of Statutes in General
            220k3020 k. In General. Most Cited Cases
Internal Revenue Code was properly enacted by Congress and signed into law by the President, and despite being amended over time, has not been repealed.

**|5| Internal Revenue 220 ☞3003**

220 Internal Revenue
    220I Nature and Extent of Taxing Power in General
        220I(A) In General
            220k3003 k. Power to Tax and Regulate in General. Most Cited Cases
Constitution clearly vests in Congress power to tax, and power to tax includes power to say what shall be taxed, who shall pay tax, and what tax shall be.

923 F.Supp. 157
923 F.Supp. 157, 77 A.F.T.R.2d 96-1033, 96-2 USTC P 50,435, 30 UCC Rep.Serv.2d 880
**(Cite as: 923 F.Supp. 157)**

Page 2

[6] **Federal Civil Procedure 170A** ☜411

170A Federal Civil Procedure
   170AIII Process
     170AIII(B) Service
      170AIII(B)1 In General
        170Ak411 k. In General. Most Cited
Cases
Right to refuse presentment of instrument under Uniform Commercial Code (UCC) did not authorize defendants to refuse "presentment" of complaint properly served by publication. 28 U.S.C.A. § 1655; U.C.C. § 3-501.

[7] **Internal Revenue 220** ☜4462.1

220 Internal Revenue
   220XVIII Administration of Taxes Generally
     220XVIII(B) Revenue Officers and Agents
      220k4462 Agents
        220k4462.1 k. In General. Most Cited
Cases
Failure of Internal Revenue Service (IRS) special agents to respond to tax protestors' lien claims did not create "consensual liens," but rather such filings were recorded for improper purpose of harassing IRS agents, and were null, void, and of no legal effect, absent any showing that liens related to any legitimate judicially awarded or contractually agreed upon damages against such agents.

*157 United States Attorney, Boise, Idaho, Jeffrey D. Snow, U.S. Department of Justice-Tax Division, Washington, D.C., for plaintiff.
Marc D. and Cheryl Andra, Hamilton, Montana, pro se.

**MEMORANDUM DECISION AND ORDER**

LODGE, Chief Judge.

**Background**

Pending before the court in the above-entitled matter is the plaintiff's Motion for Judgment on the Pleadings or in the alternative Motion for Summary Judgment (Dkt. No. 7). Having fully reviewed the record herein, the court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay,

and because the court conclusively finds that the decisional process would not be significantly *158 aided by oral argument, this matter shall be decided on the record before this court without oral argument. Local Rule 7.1(b).

The plaintiff, the United States government, filed a complaint for declaratory relief and permanent injunction against the defendants, Marc and Cheryl Andra (collectively referred to as the "Andras"). The government alleges that the Andras filed invalid liens in excess of $17 million against the real property of two Internal Revenue Service ("IRS") Special Agents, Mr. Ken Bethke and Mr. Jim Peterson. The government seeks to have the liens declared null and void, removed from the county records and to permanently enjoin the defendants from filing any liens against government employees.

The defendants refused service of process claiming that they are not residents. The court entered an order allowing the government to serve the defendants by publication in accordance with 28 U.S.C. § 1655. The court has reviewed the record and has determined that the defendants were properly served both the complaint and additional pleadings in this case.

The defendants returned the court's order dated August 4, 1995, to the court and stamped on the order "Refused for Cause U.C.C. 3-501." The defendants attached to the court's order a Refusal and a Refusal and Notice of Default and Fraud. These documents were also attached as exhibits to the government's motion for judgment on the pleadings. On December 19, 1995, the court received a document entitled "Refusal of Presentments Fraudulent in Nature" from the defendants. In the Refusals, the defendants claim the court has no jurisdiction over the consensual liens, and that the complaint filed by the United States which the defendants refer to as "presentments" are fraudulent.

The Refusals go on to state that the defendants are not residents, not "individuals" or "persons" as defined in the United States Code, and therefore are not subject to service of process as defined in Federal Rules of Civil Procedure, Rule 4. Furthermore, the defendants claim that they never agreed to become defendants in this matter. The defendants argue that Title 26 of the United States Code was never enacted and, therefore, they are not subject to such statutes. The defendants

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

923 F.Supp. 157                                                                                    Page 3
923 F.Supp. 157, 77 A.F.T.R.2d 96-1033, 96-2 USTC P 50,435, 30 UCC Rep.Serv.2d 880
**(Cite as: 923 F.Supp. 157)**

claim that the liens are consensual liens which are against the IRS agents individually and not in their official capacity and are for the damages suffered by the defendants due to the IRS agents' actions. Finally, the defendants allege that the statements in the government's complaint are fraudulent and the government has no legal recourse or remedy. The court will deem the defendants' Refusals to be their answer to the complaint.

### Standard for Motions for Summary Judgment

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." U.S.C.S. Court Rules, Rule 56(c), Federal Rules of Civil Procedure, (Law.Co-op.1987).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See, Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323, 106 S.Ct. at 2552-53.[FN1]

> FN1. See also, Rule 56(e) which provides, in part:
>
> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if

appropriate, shall be entered against the adverse party.

> U.S.C.S. Court Rules, Rules of Civil Procedure, Rule 56(e) (Law. Co-op. 1987 & Supp.1991).

*159[1][2] Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir.1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). The Ninth Circuit cases are in accord. See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir.1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

[3] Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir.1992).

### Summary Judgment Analysis

After having thoroughly reviewed the entire record, the court finds that the plaintiff is entitled to judgment on the pleadings or, in the alternative, for summary judgment in the favor of the plaintiff.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

923 F.Supp. 157
923 F.Supp. 157, 77 A.F.T.R.2d 96-1033, 96-2 USTC P 50,435, 30 UCC Rep.Serv.2d 880
(Cite as: 923 F.Supp. 157)

Page 4

The defendants' claims or defenses to the plaintiff's claims are without merit. First, the court has the jurisdiction to decide this matter pursuant to 26 U.S.C. § 7402(a) and 28 U.S.C. § 1340 and § 1345.

[4][5] Second, Title 26 of the United States Code was properly enacted by Congress and signed into law by the President of the United States. The Constitution clearly vests in Congress the power to tax, and power to tax includes power to say what shall be taxed, who shall pay tax, and what the tax shall be. The Internal Revenue Code has been amended over time, but has not been repealed to eliminate Title 26. Moreover, arguments challenging the constitutionality of the tax code have consistently been rejected by the Supreme Court. Therefore, the defendants have failed to establish that the actions of the IRS Special Agents were unlawful or beyond the scope of duties as defined by the Internal Revenue Code and/or applicable regulations.

[6] Third, the defendants' "refusal for cause" is meaningless. The defendants claim they can refuse "presentment" of the plaintiff's complaint pursuant to U.C.C. 3-501. Apparently, the defendants are arguing that § 3-501(2)(c)(ii) is a defense which provides for the defendants' "refusal of payment or acceptance for failure of the presentment to comply with the terms of the instrument, an agreement of the parties, or other applicable law or rule." The defendants reliance on Chapter 3 of the U.C.C. is misplaced; Chapter 3 of the U.C.C. by its own definitions is only applicable to "negotiable instruments". The complaint filed by the plaintiff is not a negotiable instrument and the Uniform Commercial Code is inapplicable. The defendants do not have the choice of whether or not to be defendants. If properly served, as this court has determined the defendants were, the Andras became parties to this lawsuit whether they wanted to be or not.

[7] Fourth, the court does not recognize the legality of a "consensual lien" which is *160 created simply by one party failing to respond to another party's documents. This is more properly described as a non-consensual lien as the party upon whom the lien is against never agreed to the lien as part of any contract or as provided by any state or federal lien statute. The court can find no legal authority or common law support which would allow or give legal effect to the type of "lien" (consensual or non-consensual) filed by the defendants against the IRS Special Agents.

The court has reviewed the cases cited by the government to support the proposition that the type of lien filed by the defendants against the IRS Special Agents are not allowed and have the effect of harassing government employees and preventing such employees from performing their duties.[FN2] The court agrees with the opinions in those cases that there are other avenues besides the filing bogus liens for taxpayers to file complaints against employees of the IRS, and that the court cannot condone the filing of any type of liens which are not provided by state or federal lien statutes and which have not been consented to by encumbered party in some form other than failing to respond to the defendants' documents.

> FN2. The court reviewed the following cases: *Ryan v. Bilby*, 764 F.2d 1325 (9th Cir.1985); *United States v. Ekblad*, 732 F.2d 562 (7th Cir.1984); *United States v. Thomas*, 819 F.Supp. 927 (D.Colo.1993); and *United States v. Hart*, 545 F.Supp. 470 (D.N.D.1982), *aff'd* 701 F.2d 749 (8th Cir.1983).

Accordingly, the court finds that there exists no genuine issue of material fact to prevent summary judgment from being granted in favor of the plaintiff. The amount of the liens as well as the method used to "create" the liens by the defendants are without support in the law. The court finds that the so-called "liens" recorded against the real property of Special Agent Bethke and Peterson were recorded to harass the IRS agents and have not been shown by the defendants to relate to any legitimate judicially awarded or contractually agreed upon damages against such IRS agents. The court finds that the liens are null, void and of no legal effect and should be released from encumbering the property of the IRS employees. Furthermore, the defendants should be enjoined from filing bogus liens against employees of the IRS.

### ORDER

Being fully advised in the premises, the court hereby **ORDERS**:

1. That the plaintiff's Motion for Judgment on the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

923 F.Supp. 157
923 F.Supp. 157, 77 A.F.T.R.2d 96-1033, 96-2 USTC P 50,435, 30 UCC Rep.Serv.2d 880
**(Cite as: 923 F.Supp. 157)**

Page 5

Pleadings or, in the alternative, Motion for Summary Judgment (Dkt. No. 7) is **GRANTED.**

2. That the "Notice of Default and Claim of Lien" filed by the Andras in the amount of $17,170,163.00 pertaining to Ken Bethke and the identical "Notice of Default and Claim of Lien" filed in the amount of $17,170,163.00 pertaining to Jim Peterson both recorded on March 25, 1994, with the Recorder of Kootenai County, Idaho, are **NULL, VOID AND OF NO LEGAL EFFECT.**

3. That the United States is directed to draft a proposed judgment consistent with this order, and the United States is granted permission to record the court's judgment in this matter with any county clerk and/or recorder.

4. That the defendants, Marc Andra and Cheryl Andra, are permanently enjoined from filing, or attempting to file, any document or instrument which purports to create any non-consensual lien or encumbrance of any kind against (1) any government employee who authorized and/or performed any action in connection with the assessment and/or collection of federal income tax liabilities, and/or (2) any government employee who authorized or performed any action in connection with the enforcement of the internal revenue laws.

5. The court clerk is directed to file as the defendants answer to the complaint, the Refusals received by the court on August 4, 1995, and December 19, 1995.

D.Idaho,1996.
U.S. v. Andra
923 F.Supp. 157, 77 A.F.T.R.2d 96-1033, 96-2 USTC P 50,435, 30 UCC Rep.Serv.2d 880

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

19 F.Supp.2d 1380
19 F.Supp.2d 1380
**(Cite as: 19 F.Supp.2d 1380)**

Page 1

**H**U.S. v. Barker
S.D.Ga.,1998.

United States District Court,S.D. Georgia,Brunswick
Division.
UNITED STATES of America, Plaintiff,
v.
Bill R. BARKER, Andrei Lee Royster, Jaromir
William John, Hugh Dean Mingo, Charles Niles,
Charlie T. Janes, Sr., Allen Dale Nowland, Jorge
Arturo Borjas Del Cid, Bobby Riley, Jr., and John and
Jane Does # 3-10, Defendants.
**No. CV 298-143.**

Aug. 26, 1998.

The United States brought action against prison
inmates seeking declaratory and injunctive relief
enjoining inmates from filing "commercial liens"
against federal employees, who had allegedly failed to
perform their duties by taking positions adverse to the
inmates. On government's motion for summary
judgment, the District Court, <u>Nangle</u>, J., held that: (1)
inmates' claims had no basis in federal or state law,
and "liens" were null and void; (2) District Court had
jurisdiction; (3) venue was proper; (4) District Court
had power to enter declaratory judgment; (5) inmates
were not entitled to any first amendment protection;
(6) inmates were not entitled to jury trial; and (7)
inmates were subject to Federal Rule 11 sanctions.

Motion granted.

West Headnotes

**[1] United States 393 ⬠41**

<u>393</u> United States
    <u>393I</u> Government in General
        <u>393k41</u> k. Duties of Officers and Agents and
Performance Thereof. <u>Most Cited Cases</u>
Prison inmates' claim of entitlement to "commercial
liens" against federal employees who had taken
positions adverse to inmates, on theory that members
of public could sue federal employees who failed to
perform their duties, had no basis in federal or state
law, and "liens" were null and void.

**[2] Officers and Public Employees 283 ⬠110**

<u>283</u> Officers and Public Employees
    <u>283III</u> Rights, Powers, Duties, and Liabilities
        <u>283k110</u> k. Duties and Performance Thereof in
General. <u>Most Cited Cases</u>
Citizen may not file lien on property of public official
based on citizen's belief that official has not faithfully
fulfilled his or her duties to the public; such grievances
are addressed at ballot box or through other political
activity.

**[3] Officers and Public Employees 283 ⬠119**

<u>283</u> Officers and Public Employees
    <u>283III</u> Rights, Powers, Duties, and Liabilities
        <u>283k119</u> k. Actions by or Against Officers and
Employees. <u>Most Cited Cases</u>
Citizen may not file lien on property of public official
for alleged wrongs committed by that official against
citizen without existence of judgment in citizen's
favor; citizen must first take his grievance to court,
and if he wins judgment against official that is not
paid, then and only then may citizen obtain judgment
lien against official.

**[4] Declaratory Judgment 118A ⬠274.1**

<u>118A</u> Declaratory Judgment
    <u>118AIII</u> Proceedings
        <u>118AIII(B)</u> Jurisdiction and Venue
            <u>118Ak274</u> Jurisdiction of Federal Courts
                <u>118Ak274.1</u> k. In General. <u>Most Cited
Cases</u>
District Court had jurisdiction over government's
action for declaratory and injunctive relief against
prison inmates, who had filed "commercial liens"
against federal employees on theory that members of
public could sue federal employees who failed to
perform their duties, where action was civil action
filed by the United States. <u>28 U.S.C.A. § 1345.</u>

**[5] Declaratory Judgment 118A ⬠271**

<u>118A</u> Declaratory Judgment
    <u>118AIII</u> Proceedings

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

118AIII(B) Jurisdiction and Venue
118Ak271 k. In General. Most Cited Cases
District in which prison inmates resided, and in which claim arose, was proper venue for government's action for declaratory and injunctive relief against inmates. 28 U.S.C.A. § 1391(b).

**[6] Declaratory Judgment 118A ⟜274.1**

118A Declaratory Judgment
118AIII Proceedings
118AIII(B) Jurisdiction and Venue
118Ak274 Jurisdiction of Federal Courts
118Ak274.1 k. In General. Most Cited Cases
District Court had power to enter declaratory judgment in action for declaratory and injunctive relief brought by government against prison inmates. 28 U.S.C.A. §§ 2201, 2202.

**[7] Constitutional Law 92 ⟜1194**

92 Constitutional Law
92X First Amendment in General
92X(B) Particular Issues and Applications
92k1193 Prisons
92k1194 k. In General. Most Cited Cases
(Formerly 92k82(13))

**Injunction 212 ⟜188**

212 Injunction
212IV Preliminary and Interlocutory Injunctions
212IV(B) Continuing, Modifying, Vacating, or Dissolving
212k188 k. Costs on Dissolution. Most Cited Cases
Prison inmates were not entitled to any First Amendment protection in action for declaratory and injunctive relief brought against them by the government to enjoin them from filing "commercial liens" against federal employees on theory that members of public could sue public officials who had failed to perform their duties. U.S.C.A. Const.Amend. 1.

**[8] Officers and Public Employees 283 ⟜119**

283 Officers and Public Employees

283III Rights, Powers, Duties, and Liabilities
283k119 k. Actions by or Against Officers and Employees. Most Cited Cases
Where defendants have exhausted all remedies that due process allows, they cannot turn to terror tactics in effort to force public officials to change their minds.

**[9] Jury 230 ⟜13(3)**

230 Jury
230II Right to Trial by Jury
230k13 Legal or Equitable Actions or Issues
230k13(3) k. Application of Constitutional Provisions in General. Most Cited Cases
The Seventh Amendment right to jury trial is available only in matters that were historically legal in nature. U.S.C.A. Const.Amend. 7.

**[10] Jury 230 ⟜14(11)**

230 Jury
230II Right to Trial by Jury
230k14 Particular Actions and Proceedings
230k14(11) k. Injunction in General. Most Cited Cases

**Jury 230 ⟜14(12.5)**

230 Jury
230II Right to Trial by Jury
230k14 Particular Actions and Proceedings
230k14(12.5) k. Declaratory Judgment Cases. Most Cited Cases
Prison inmates were not entitled to jury in action brought by the government for declaratory and injunctive relief to enjoin inmates from filing "commercial liens" against public officers who had ruled against inmates or taken position adverse to inmates; government sought equitable relief, and there were no fact issues to be tried. U.S.C.A. Const.Amend. 7.

**[11] Federal Civil Procedure 170A ⟜2788**

170A Federal Civil Procedure
170AXX Sanctions
170AXX(B) Grounds for Imposition
170Ak2767 Unwarranted, Groundless or Frivolous Papers or Claims
170Ak2788 k. Pro Se Filings. Most

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

19 F.Supp.2d 1380
19 F.Supp.2d 1380
(Cite as: 19 F.Supp.2d 1380)

Page 3

Cited Cases
Despite their pro se status, prison inmates, who filed "commercial liens" against federal employees on theory that members of public could sue public officials who had failed to perform their duties, were subject to Federal Rule 11 sanctions. Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A.

*1382 Delora L. Grantham, United States Attorney, Savannah, Ga, D. James Greiner, Dept. of Justice-Civil Division, Washington, DC, for United States of America, plaintiff.

Bill R. Barker, FCI Jesup, Jesup, GA, pro se.
Andrei Lee Royster, FCI Jesup, Jesup, GA, pro se.
Jaromir William John, FCI Jesup, Jesup, GA, pro se.
Hugh Dean Mingo, FCI Talladega, Talladega, AL, pro se.
Charles Niles, FCI Jesup, Jesup, GA, pro se.
Allen Dale Nowland, FCI Jesup, Jesup, GA, pro se.
Charlie T. Janes, Sr., FCI Jesup, Jesup, Ga, pro se.
Jorge Arturo Borjas Del Cid, FCI Jesup, Jesup, GA, pro se.
Bobby, Jr., Jesup, Ga, pro se.
Anthony T. Jones, FCI Jesup, Jesup, GA, pro se.

### ORDER

NANGLE, District Judge.
Before the Court is plaintiff's motion for summary judgment. In an Order dated August 10, 1998, this Court instructed defendants to respond to the motion for summary judgment by 5:00 p.m. Monday, August 17, 1998 in a single, consolidated brief. Defendants filed nothing that was clearly a response to the summary judgment motion. Despite the fact that defendants have not responded to the Order of August 10, 1998, the Court will construe the following motions to be responses to the motion for summary judgment: [FN1] (1) The motion to dismiss (filed by defendants Janes, Niles, and Riley) and the motion to vacate and sever (filed by defendants John, Janes, Riley, and Niles) are construed to be these defendants' collective response to the plaintiff's motion for summary judgment. (2) Defendant Barker's motion to sever and "notice to this court, you are absent jurisdiction" is construed to be his response to the motion for summary judgment. (3) Defendant Nowland's answer to the complaint is construed to be his response. (4) Defendant Del Cid's motion to sever and for jury trial is construed to be his response. (5) Defendant Royster has filed no documents.

Consequently, he is construed to have joined with every document described above.

> FN1. This construction is intended by the Court to give the benefit of the doubt to these pro se defendants. Under the circumstances, this Court feels it is being extremely lenient to these overly litigious and abusive defendants. The alternative to such a construction is to enter summary judgment for the United States pursuant to Local Rule 7.5. Under the circumstances, the Court believes that defendants would rather the case continue to go forward even if limitations are imposed upon their ability to file documents.

### I. BACKGROUND

Defendants are all present or former inmates housed in the Federal Correctional Institution located in Jesup, Georgia. While imprisoned there, defendants filed numerous habeas petitions and lawsuits against their prosecutors, judges, and anyone else they believe to be associated with their convictions and eventually against anyone they believe to have wronged them in some way.[FN2] As part of these suits or as a reaction to adverse rulings in these suits, defendants began to file so-called "commercial liens" against federal employees. Their theory for the validity *1383 of these liens appears to be a social contract theory, i.e., that public officials have a contract with the public to perform their duties whereupon the public can sue if these duties are not adequately performed.[FN3] In the ridiculous world of these defendants, any federal official who rules against the defendants or who takes a position adverse to the defendants has breached his duty to the public and therefore can be sued under this mysterious social contract. Consequently, defendants' "liens" have been filed against nearly every high ranking federal official, from President Clinton, both houses of Congress, and the Supreme Court to the prosecutors and judges from defendants' criminal cases and the employees of nearly every federal agency. Defendants have provided no statutory, constitutional, or common law support for the validity of these purported liens.[FN4]

> FN2. For example, defendant Barker alone has filed 6 such suits in this district alone: CV 291-251, CV 292-30, CV 293-57, CV

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

297-123, and CV 297-176-all writs for habeas corpus-and CV 298-23-a suit to vacate his sentence under 28 U.S.C. § 2255. Barker began filing liens in this district in 1997. CV 297-123. Additionally, defendant Nowland admitted that "the 27 people I have in my liens were responsible for me being here either directly or indirectly." Nowland's answer to the complaint filed August 19, 1998, at 4. Defendants John, Janes, Niles and Riley assert that their liens are based on a contract between public officials and American citizens that entitle citizens to sue if the officials violate their public duties. *See* Motion to Vacate and to Sever filed individually by each of these four defendants on August 17, 1998, at 1. Finally, defendant del Cid asserts that his liens are based on the "complete and total disregard for Defendants' Constitutional rights" of the Immigration and Naturalization Service. *See* Motion for Severance and Jury Trial filed August 14, 1998, at 1.

FN3. *See* Motion to Vacate and to Sever filed individually by defendants John, Janes, Niles, and Riley on August 17, 1998, at 1. Apparently this is the theory that defendant Barker also espouses. *See* Affidavit attached to Notice to this Court, You are Absent Jurisdiction filed August 12, 1998, at 1 (alleging that the "lien debtors" have committed treason in time of war and grossly violated their oath of office). *See also* Nowland's answer to the complaint filed August 19, 1998, at 3 (stating that "the liens were filed because the people involved are ignoring their Oath of Office and disobeying both case law and constitutional law"); del Cid's Motion for Severance and Jury Trial filed August 14, 1998, at 1 (alleging that his liens deal with "[c]onstitutional violations instituted by the Immigration and Naturalization Service, and its representatives").

FN4. Indeed, defendants Janes, Niles and Riley practically admit that these liens are baseless by describing them as "NON-STATUTORY, NON-JUDICIAL, NON-SUMMARY DISPOSABLE U.C.C.

COMMERCIAL PAPER/LIEN." Motion to dismiss, filed individually by each of these three defendants on August 17, 1998, at 3 (emphasis in original).

To protect its employees from further harassment and attempted extortion, the United States filed this suit seeking declaratory and injunctive relief against these defendants on July 31, 1998. A temporary restraining order was entered on July 31, 1998, and a preliminary injunction was entered on August 10, 1998. This motion for summary judgment was filed by the United States on August 10, 1998.

## II. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The United States has moved for summary judgment on the grounds that these liens have no basis in law or fact, are filed for an improper purpose, and are impairing the government's ability to properly perform its duties. Defendants' only arguments against summary judgment in this case are that this Court lacks subject matter jurisdiction, that the "liens" are a protected exercise of the First Amendment right to petition the government for redress of grievances, and that defendants have a right to a jury trial before the validity of these liens can be determined.

Summary judgment is appropriate if there are no genuine issues of material fact and if the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment serves to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed.R.Civ.P. 56 advisory committee's note, *cited in* *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It is appropriate only when the pleadings, depositions and affidavits submitted by the parties indicate no genuine issue of material fact and show that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A court must view the evidence and any inferences that may be drawn from it in the light most favorable to the nonmovant. *Mercantile Bank & Trust Co., Ltd. v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir.1985).

## A. VALIDITY OF THE "LIENS"

[1] It is by now established beyond dispute that the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

19 F.Supp.2d 1380
19 F.Supp.2d 1380
(Cite as: 19 F.Supp.2d 1380)

United States may request the assistance of Article III courts to protect its officials from attempts at harassment, intimidation, and extortion in the form of "liens" commonly filed by tax protesters and prisoners. Every court to consider the validity of such documents has held them invalid. *See, e.g., United States v. McKinley*, 53 F.3d 1170; 1171-72 (10th Cir.1995); *United States v. Reeves*, 782 F.2d 1323, 1326 (5th Cir.), *cert.* *1384 *denied*,479 U.S. 837, 107 S.Ct. 136, 93 L.Ed.2d 79 (1986); *Ryan v. Bilby*, 764 F.2d 1325, 1327 (9th Cir.1985); *United States v. Ekblad*, 732 F.2d 562, 563 (7th Cir.1984) (per curiam); *United States v. Hart*, 701 F.2d 749, 750 (8th Cir.1983) (per curiam); *United States v. MacElvain*, 858 F.Supp. 1096 (M.D.Ala.1994), *aff'd*,68 F.3d 486 (11th Cir.1995); *United States v. Thomas*, 819 F.Supp. 927 (D.Colo.1993); *Saenger v. Brown*, 88-2 USTC ¶ 9404, 1988 WL 184863 (D.Ore. May 3, 1988); *Peth v. Breitzmann*, 611 F.Supp. 50, 55 (E.D.Wis.1985); *United States v. Shugarman*, 596 F.Supp. 186, 193 (E.D.Va.1984); *United States v. Van Dyke*, 568 F.Supp. 820, 822 (D.Ore.1983). In particular, the social contract theory of liens espoused by defendants in this case has been held invalid.

> To read these documents ... is to recognize the fundamental frivolity of the legal tenets espoused therein. We are not familiar with a citizen-customer's authority to exact a consensual commercial lien from a public official, but it is a power that has no mooring in either federal or state law.

*United States v. McKinley*, 53 F.3d at 1171-72.

[2][3] Similarly, the defendants' purported liens have no basis in federal or state law. Neither federal nor state law provides that a citizen may file a lien on the property of a public official if the citizen believes that the official has not faithfully fulfilled his or her duties to the public. On the contrary, the strength of our democratic system lies in the fact that such grievances are addressed at the ballot box or through other political activity. Additionally, neither federal nor state law provides that a citizen may file a lien on the property of a public official for alleged wrongs committed by that official against the citizen without the existence of a judgment in the citizen's favor. The citizen must first take his grievance to court, and if he or she wins a judgment against the official *that is not paid,* then and only then may the citizen obtain a judgment lien against the official.

Defendants' method of lien filing, i.e., filing liens whenever the individual feels grieved or wronged by a public official, unduly interferes with the government's ability to perform its duties. Public officials subject to harassing and malicious filings such as the liens at issue in this case cannot effectively perform their duties. Indeed, they may be coerced by such filings into making decisions that are not in the public interest just to avoid the filing of further liens. Consequently, the American citizens at large suffer when our public officials are not able to perform their duties free of harassment and attempts at extortion. Accordingly, all liens filed by the defendants in this case in any federal or state court in the United States are null and void and of no effect.

**B. JURISDICTION**

[4][5][6] This Court has jurisdiction pursuant to 28 U.S.C. § 1345 as this is a civil action filed by the United States. This Court has venue pursuant to 28 U.S.C. § 1391(b) as this is the district in which the defendants reside and in which the claim arose. This Court has the power to enter a declaratory judgment in this case pursuant to 28 U.S.C. §§ 2201-2202. Defendants' arguments to the contrary are frivolous and have no basis in law or fact, and defendants will be held liable for such violations of Fed.R.Civ.P. 11.[FN5]

> FN5. For example, defendants Janes, Niles, and Riley misquote the law when making their arguments concerning jurisdiction. *See* Motion to Dismiss filed individually by each of these defendants on August 17, 1998, at 6 (using an ellipsis to leave out the words "except for," thereby making the exception read as the rule). Such behavior will not be tolerated by this Court.

**C. FIRST AMENDMENT**

[7][8] Contrary to defendants' assertion, there is no First Amendment right to harass, intimidate, and attempt to extort federal officials. Similarly, there is no such right to use "liens" with no basis in fact or law to pursue such improper purposes. From the record in this district alone, defendants have already used lawsuits as an attempt to get their way. It was only after their arguments were rejected and they were not

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

released from prison that the liens began to appear on the scene. Defendants obviously consider any decision against them to be a grievance for which they can sue. However, where defendants**1385** have exhausted all the remedies that due process allows, they cannot turn to terror tactics in an effort to force public officials to change their minds. The First Amendment does not protect such behavior. Defendants' arguments to the contrary are frivolous and have no basis in law or fact.

## D. RIGHT TO JURY TRIAL

[9][10] The Seventh Amendment right to jury trial is available only in matters that were historically legal in nature. "In general there is no right to a trial by jury of claims that historically were 'equitable,' such as actions for injunction, specific performance, and the like." [FN6] Similarly, "[t]here can be no right to trial by jury if there are no issues of fact to be tried." [FN7] Since the government is seeking equitable relief and since there are no issues of fact to be tried in this case, the defendants have no right to jury trial. This case can and should be decided via summary judgment so that further federal resources are not wasted.

FN6. Charles Alan Wright, Law of Federal Courts, § 92, at 654 (5th Edition 1994).

FN7. Id. at 660.

## III. CONCLUSION

[11] There are no issues of material fact in this case. Defendants' liens have no basis in law or fact. Therefore, plaintiff's motion for summary judgment is granted. An order concerning defendants' abusive, misleading, repetitious, frivolous, and baseless filings in this case will be forthcoming. Despite their pro se status, defendants are subject to Fed.R.Civ.P. 11, and their violations thereof in this case will be addressed by this Court.

Accordingly, based on all the pleadings and evidence submitted in this case,

IT IS HEREBY ORDERED that plaintiff's motion for summary judgment is granted. All motions outstanding at the time of entry of this Order are hereby denied as moot.

IT IS FURTHER ORDERED that all liens or other instruments filed by defendants in any state or federal court purporting to attach or otherwise affect the assets of any person are invalid, null, void, and of no effect.

IT IS FURTHER ORDERED that all such liens or instruments be expunged from the public record or that a copy of this Order be filed with such liens or instruments to give notice of their invalidity. The United States Attorney's Office is directed to forward a copy of this Order to all courts in which such liens or instruments are filed. The United States Attorney may petition this Court for an award of costs for this procedure at the appropriate time.

IT IS FURTHER ORDERED that defendants and their agents or any other person acting in concert with defendants be permanently enjoined from filing in any state or federal court any lien or instrument purporting to attach or otherwise affect the assets of any person without prior express written authorization from this Court. Violation of this Order is grounds for the lien or instrument to be discarded or otherwise expunged from the public record and will be considered contempt of this Court.

IT IS FURTHER ORDERED that defendants and their agents or any other person acting in concert with defendants be permanently enjoined from giving notice to any "lien debtor" or any other person, credit agency, corporation, or entity of the existence of any lien or instrument, whether filed or unfiled, purporting to attach or otherwise affect the assets of any person, without prior express written authorization from this Court. Violation of this Order will be considered contempt of this Court.

S.D.Ga.,1998.
U.S. v. Barker
19 F.Supp.2d 1380

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

182 F.R.D. 661                                                                                                   Page 1
182 F.R.D. 661
**(Cite as: 182 F.R.D. 661)**

**H**U.S. v. Barker
S.D.Ga.,1998.

United States District Court,S.D. Georgia,Brunswick
Division.
UNITED STATES OF America, Plaintiff,
v.
Bill R. BARKER, Andrei Lee Royster, Jaromir
William John, Hugh Dean Mingo, Charles Niles,
Charlie T. Janes, Sr., Allen Dale Nowland, Jorge
Arturo Borjas Del Cid, Bobby Riley, Jr., and John and
Jane Does # 3-10, Defendants.
**No. CV 298-143.**

Sept. 25, 1998.

On order to show cause why Rule 11 sanctions should
not be imposed on pro se defendant for filing a motion
with no basis in law or fact and for an improper
purpose, the District Court, Nangle, J., held that: (1)
defendant violated Rule 11 in filing motion,
warranting imposition of a fine of $2,500, and (2)
defendant's blatant and continuous abuse of the federal
judicial system warranted limits on his ability to file
motions in current suit and on his ability to file
prospective lawsuits in federal court.

So ordered.

West Headnotes

**[1] Federal Civil Procedure 170A €══2768**

170A Federal Civil Procedure
   170AXX Sanctions
     170AXX(B) Grounds for Imposition
       170Ak2767 Unwarranted, Groundless or
Frivolous Papers or Claims
         170Ak2768 k. In General. Most Cited
Cases
Sanctions are proper under Rule 11 when a party files
a pleading in bad faith for an improper purpose, or
when the pleading is based on a legal theory that has
no reasonable chance of success or that cannot be
advanced as a reasonable extension of existing law, or
when the pleading has no reasonable factual basis.
Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A.

**[2] Federal Civil Procedure 170A €══2769**

170A Federal Civil Procedure
   170AXX Sanctions
     170AXX(B) Grounds for Imposition
       170Ak2767 Unwarranted, Groundless or
Frivolous Papers or Claims
         170Ak2769 k. Reasonableness or Bad
Faith in General; Objective or Subjective Standard.
Most Cited Cases

**Federal Civil Procedure 170A €══2783(1)**

170A Federal Civil Procedure
   170AXX Sanctions
     170AXX(B) Grounds for Imposition
       170Ak2767 Unwarranted, Groundless or
Frivolous Papers or Claims
         170Ak2783 Duty of Reasonable Inquiry
           170Ak2783(1) k. In General. Most
Cited Cases
In Rule 11 sanctions, the court must determine
whether defendant's claims were objectively frivolous
and if so, whether the person who signed the pleadings
should have been aware, upon making a reasonable
inquiry, of that fact. Fed.Rules Civ.Proc.Rule 11, 28
U.S.C.A.

**[3] Federal Civil Procedure 170A €══2774(1)**

170A Federal Civil Procedure
   170AXX Sanctions
     170AXX(B) Grounds for Imposition
       170Ak2767 Unwarranted, Groundless or
Frivolous Papers or Claims
         170Ak2774 Motions and Opposition
Thereto
           170Ak2774(1) k. In General. Most
Cited Cases

**Federal Civil Procedure 170A €══2788**

170A Federal Civil Procedure
   170AXX Sanctions
     170AXX(B) Grounds for Imposition
       170Ak2767 Unwarranted, Groundless or

182 F.R.D. 661
182 F.R.D. 661
(Cite as: 182 F.R.D. 661)

Page 2

Frivolous Papers or Claims
    170Ak2788 k. Pro Se Filings. Most
Cited Cases

**Federal Civil Procedure 170A ☞2790**

170A Federal Civil Procedure
    170AXX Sanctions
        170AXX(B) Grounds for Imposition
            170Ak2767 Unwarranted, Groundless or
Frivolous Papers or Claims
                170Ak2790 k. Interposition for
Improper Purpose. Most Cited Cases
Pro se defendant violated Rule 11 in filing motion,
warranting imposition of a fine of $2,500; given
defendant's filing history in the federal courts, it was
clear that motion was filed for an improper purpose;
moreover, defendant's allegations that court and other
federal officials were engaged in an "ongoing
racketeering enterprise" against him, that alien aircraft
landings had been "covered up" by the federal
government, and that court has no jurisdiction over
case despite the fact that the United States was a party
were patently frivolous. Fed.Rules Civ.Proc.Rule 11,
28 U.S.C.A.

**[4] Federal Civil Procedure 170A ☞2788**

170A Federal Civil Procedure
    170AXX Sanctions
        170AXX(B) Grounds for Imposition
            170Ak2767 Unwarranted, Groundless or
Frivolous Papers or Claims
                170Ak2788 k. Pro Se Filings. Most
Cited Cases
District court may protect itself from the abusive
practices of pro se litigants.

**[5] Injunction 212 ☞26(4)**

212 Injunction
    212II Subjects of Protection and Relief
        212II(A) Actions and Other Legal Proceedings
        212k26 Commencement and Prosecution of
Civil Actions
            212k26(4) k. Prevention of Multiplicity
of Suits or Circuity of Action. Most Cited Cases

**Injunction 212 ☞26(5)**

212 Injunction
    212II Subjects of Protection and Relief
        212II(A) Actions and Other Legal Proceedings
        212k26 Commencement and Prosecution of
Civil Actions
            212k26(5) k. Successive Actions. Most
Cited Cases
Blatant and continuous abuse of the federal judicial
system by pro se defendant warranted limits on his
ability to file motions in current suit and on his ability
to file prospective lawsuits; thus, district court would
enjoin defendant from filing any further motions in the
instant suit until further order, and from filing a
lawsuit in any federal district court unless certain
conditions were met.

*662 Delora L. Grantham, United States Attorney,
Savannah, GA, D. James Greiner, Dept. of
Justice-Civil Division, Washington, DC, for United
States of America.
Andrei Lee Royster, Jesup, GA, Pro se.
Jorge Arturo Borjas Del Cid, Jesup, GA, Pro se.
Bobby, Jr., Jesup, GA, Pro se.
Anthony T. Jones, Jesup, GA, Pro se.

**ORDER**

NANGLE, District Judge.
On August 26, 1998, this Court ordered defendant
Barker to show cause why this Court should not
impose Rule 11 sanctions upon him for filing a motion
with no basis in law or fact and for an improper
purpose (Doc. 75). In this motion, Barker requested
that the Court reconsider its denial of his motion for
subpoena duces tecum, its denial of defendants'
collective motion to secure their appearance, and its
grant of the government's motion for preliminary
injunction. Defendant's motion was filled with
unsubstantiated accusations against this Court and
officers of the federal government,[FN1] blatant *663
disrespect for this Court and its orders,[FN2] and
outlandish allegations that have no basis in law or
fact.[FN3] This Court gave Barker ten days from the date
of the Order to respond and specifically warned:

    FN1.See Defendant Barker's motion to
    reconsider ("Barker's motion") filed August
    19, 1998, at 1 ("Defendant Barker, alleges
    that the Executive, Legislative and Judicial
    Branch of Government is engaged in a
    **REIGN OF TERROR**, against the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

182 F.R.D. 661
182 F.R.D. 661
**(Cite as: 182 F.R.D. 661)**

268,000,000 American Citizens.") (emphasis in original); Barker's motion at 2 ("Honorable Court, you (Court) and Executive Branch have entered into an ongoing racketeering enterprise against WE *THE PEOPLE* ") (emphasis in original); Barker's motion at 3 ("Honorable Court, Executive Branch and Judicial Branch, you have violated Title 18 USC § 1001 et seq., under color of law."); Barker's motion at 4 ("You tell a two-faced lie and then swear that it is the truth."); Barker's motion at 5 ("In fact each of you are guilty of treason and are a traitor to the United States of America Constitution of 1787.").

FN2. Barker's motion at 3 ("This is the stated issue by the government in this 'frivolous' order"); Barker's motion at 4 ("Court and Prosecutors, before you keep running-your mouth, check with someone higher than you in the Chain of Commands."); Barker's motion at 5 ("*YOUR PHONY ORDERS MAKE ME SICK*") (emphasis in original).

FN3. Barker's motion at 2 ("In each State in this United States my colorable liens have standing, period."); Barker's motion at 3 ("Court, you have a problem, the Congress (House & Senate) are '**now running for cover**' as the Members of the Legislative Branch did '*Bribe*' witnesses under Title 18 USC § 201 et seq., which if [sic] a felony, period.") (emphasis in original); Barker's motion at 4 ("*HONORABLE COURT I WAS THERE/I SAW, I DID FLY BACK ALIENS CRAFT WHICH CRASHED IN NEW MEXICO, TEXAS, ARIZONA AND ELSEWHERE* ") (emphasis in original); Barker's motion at 5 ("This court is absent jurisdiction"); Barker's motion at 5 ("Court, Executive Branch and Congress, before the Court has any jurisdiction in this case the **(1st) First; (5th) Fifth; (7th) Seventh; (9th) Ninth; (10th) Tenth; (14th) Fourteenth and (Original) (13th) Thirteenth Amendment of 1819 will have to be ¶ '*REPEALED*¶ ', Period.**") (emphasis in original).

Failure to comply with this show cause order or failure

to demonstrate that this motion does not violate Rule 11 will subject defendant Barker to sanctions including but not limited to fines, limits on his ability to file papers in this case, and the striking of his response to plaintiff's motion for summary judgment. Order dated August 26, 1998, at 3. (Doc. 87). Defendant Barker has appealed the show cause order to the United States Court of Appeals for the Eleventh Circuit. As the August 26 Order was not a final order, defendant's appeal is an interlocutory appeal, and as such, this Court retains jurisdiction over the parties and matters in this case. 28 U.S.C. § 1292(b), *Washington v. Alaimo,* 934 F.Supp. 1395, 1396 (S.D.Ga.1996). As of the date of this Order, defendant Barker has not responded to the show cause Order.

[1][2] By presenting a signed pleading, written motion, or other paper to a court, an unrepresented party certifies "to the best of his knowledge" that "it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation,"Fed.R.Civ.P. 11(b)(1), that "the claims, defenses and other legal contentions therein are warranted by existing law,"Fed.R.Civ.P. 11(b)(2), and that "the allegations and other factual contentions have evidentiary support,"Fed.R.Civ.P. 11(b)(3). Sanctions are proper when a party files a pleading in bad faith for an improper purpose, or when the pleading is based on a legal theory that has no reasonable chance of success or that cannot be advanced as a reasonable extension of existing law, or when the pleading has no reasonable factual basis. *Jones v. Int'l Riding Helmets, Ltd.,* 49 F.3d 692, 694 (11th Cir.1995). In applying such sanctions, the Court must determine whether defendant's claims are objectively frivolous and if so, whether the person who signed the pleadings should have been aware, upon making a reasonable inquiry, of that fact. *Worldwide Primates, Inc. v. McGreal,* 87 F.3d 1252, 1254 (11th Cir.1996).

[3] Given Barker's filing history in this and other cases in the federal courts, it is clear that his motion was filed for an improper purpose.[FN4] Additionally, even a cursory *664 reading of his allegations clearly shows that they are objectively frivolous and have no basis in law or fact. Even though Barker is a pro se prisoner litigant, he should have been aware that allegations that this Court and other federal officials were engaged in an "ongoing racketeering enterprise" against him, that alien aircraft landings have been

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

182 F.R.D. 661
182 F.R.D. 661
**(Cite as: 182 F.R.D. 661)**

"covered up" by the federal government, and that this Court has no jurisdiction over this case despite the fact that the United States is a party are patently frivolous. Consequently, this Court finds that defendant Barker has violated <u>Fed.R.Civ.P. 11</u> and **HEREBY ORDERS** that Barker pay a $2500 fine <u>FN5</u> to the Court. Accordingly, the Court hereby directs the trust or financial officer of the Federal Correctional Institute in Jesup, Georgia to freeze Barker's inmate account, to deduct sufficient funds to satisfy this fine, and to forward these funds to the Clerk of this Court forthwith. To facilitate the speedy collection of this fine, the Clerk of Court is directed to forward a copy of this Order to the Warden of the Federal Correctional Institute in Jesup, Georgia.

> <u>FN4.</u> In this case alone, Barker has filed multiple identical copies of eight different motions and documents and has violated the Temporary Restraining Order entered in this case by attempting to file a lien against this Court after he was specifically enjoined from doing so. *See* Order dated August 24, 1998. (Doc. 86). He has also filed two notices to the Court purporting to show the Court that all its orders are unconstitutional (Doc. 53, Doc. 68), two motions for reconsideration (Doc. 75, Doc. 103), one motion for writ of mandamus (Doc. 77), one notice of "treason by executive-legislative & judicial branch" (Doc. 93), and five notices of appeal (Doc. 101, Doc. 102, Doc. 111, Doc. 117, Doc. 118). Indeed, he is one of the main reasons this case, which is less than 2 months old, has 120 docket entries.

> Additionally, Barker is responsible for at least 20 civil cases presently or formerly before the federal judiciary, including 6 cases in this district and 14 cases in the Middle District of Florida. All of these cases were filed after Barker's 1986 conviction in the Middle District of Florida, and most of these cases are based on alleged improprieties in Barker's criminal conviction. *See, e.g., Barker v. Honsted,* CV 291-251 (S.D.Ga.1991) (petition for writ of habeas corpus); *Barker v. Honsted,* CV 292-30 (S.D.Ga.1992) (same); *Barker v. Lamer,* CV 293-57 (S.D.Ga.1993) (same); *Barker v. Wooten,*

CV 297-123 (S.D.Ga.1997) (same); *Barker v. Wooten,* CV 297-176 (S.D.Ga.1997) (same); *Barker v. Wooten,* CV 298-23 (S.D.Ga.1998) (motion to vacate sentence). Barker's favorite tactic is to file liens against every federal official whose name he can find in the prison library, including both houses of Congress, the entire Southern District of Georgia, the entire Eleventh Circuit, all the justices on the Supreme Court, and nearly every high ranking cabinet member and officer in the Executive Branch. *See, e.g., Barker v. Wooten,* CV 297-176 (S.D.Ga.1997).

> <u>FN5.</u> The Court arrived at this amount from its own rough estimate of how much Barker's adventures in litigation have cost the federal government and from information concerning his inmate trust account received from the United States Attorney. (Doc. 73). Barker alone has filed 20 different motions, notices, and documents in the two months that this case has been on the docket. This number does not include the innumerable duplicates that Barker attempted to file but which the Clerk of Court merely marked received. *See* Order dated August 24, 1998 (Doc. 86). The Court was forced to respond directly to many of these documents, and seven Orders of this Court are direct dispositions of Barker's motions. Every motion and document filed by defendant Barker has been rife with frivolous arguments. Consequently, the fact that this Court had to waste time and paper in ruling on them is grounds enough for imposing sanctions. Additionally, because of Barker's duplicative motions practice, the Clerk of Court has been forced to specially screen all of his filings in order to weed out any such motions. This screening procedure is a severe drain on the already limited resources of the Clerk's office. As of August 18, 1998, defendant Barker had $4125.12 in his inmate account. Given his obvious litigious bent, the Court believes that a $2500 fine is necessary to impress upon defendant Barker that the type of conduct he has exhibited in the above-captioned case will not be tolerated by the federal courts. The Court notes that this amount is far below the actual amount that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

182 F.R.D. 661
182 F.R.D. 661
(Cite as: 182 F.R.D. 661)

Page 5

Barker's actions have cost the federal government.

[4][5] Finally, this Court notes that defendant Barker's blatant and continuous abuse of the federal judicial system calls for certain limits on his ability to file motions in this matter and on his ability to file prospective lawsuits. It is now well settled that a district court may protect itself from the abusive practices of pro se litigants. *Martin-Trigona v. Shaw,* 986 F.2d 1384, 1387-88 (11th Cir.1993) (per curiam) (stating that " 'considerable discretion necessarily is reposed in the district court' when it drafts ... orders [restricting litigious parties' right of access to the courts]") (quoting *Procup v. Strickland,* 792 F.2d 1069, 1074 (11th Cir.1986)); *Procup v. Strickland,* 792 F.2d 1069, 1073 (11th Cir.1986) (en banc) (per curiam) ("There should be little doubt that the district court has the jurisdiction to protect itself against ... abuses...."); *Washington,* 934 F.Supp. at 1399 ("This circuit has also recognized the power of district courts to strictly control the access which abusive litigants have to judicial resources.") (citations omitted).

Accordingly, this Court **HEREBY ENJOINS** defendant Barker from filing any further motions in this matter until further order of this Court. Thus, any more filings by Barker in this district, regardless of the case number on the pleading, will *not* be docketed to CV 298-143. Instead, the Clerk shall return to Barker any such filing with a copy of this Order, noting only "attempted filing" *665 on the docket at that time. The Clerk is directed to circulate copies of this Order to all Judges, Magistrate Judges and Clerk's offices in the district.

**IT IS FURTHER ORDERED** that defendant Barker be enjoined from filing a lawsuit in this or any other federal district court unless the following conditions are met:

1. In addition to paying the requisite filing fee,[FN6] Barker must post a $1000.00 contempt bond with the Clerk of Court.[FN7] This bond will be held by the Clerk of Court, and if Barker has conducted the affairs in his case appropriately within the parameters of Rule 11, the bond will be returned to Barker at the conclusion of his case.

FN6. Barker has already demonstrated his ability to pay filing fees as he has paid all filing and appeals fees in every case to which he has been a party in this District.

FN7. This amount is arrived at in the same manner as the Rule 11 fine. *See* footnote 5, *supra.* This provision is intended to make it more expensive for Barker to engage in his favorite pastime-recreational litigation from his prison cell. Additionally, the bond is intended to prevent Barker from abusing federal employees by filing frivolous lawsuits and documents against them, such as the alleged commercial liens at issue in this case, and then refusing to respond to a show cause order. Given Barker's overly litigious history, the Court believes that this bond is necessary to convince Barker to play by the rules.

2. A signed affidavit shall accompany his complaint in which Barker swears that he has read Fed.R.Civ.P. 11, that he will abide by that Rule, that his claims are novel and not frivolous, and that he understands that by signing the affidavit, he is subjecting himself to the possibility of contempt for false swearing if his claims are subsequently found to violate Rule 11.

3. A photocopy of this Order shall be attached to his complaint.

4. A list of all cases previously filed involving the same, similar, or related causes of action shall accompany his complaint.

5. Failure to comply with this Order shall be sufficient grounds for the district court to dismiss his complaint with prejudice.

The Clerk is directed to return any complaint from Barker not in compliance with this Order. Upon Barker's compliance with the above mandates, the Clerk shall accept the filing fee and contempt bond and submit the complaint, prior to filing, to the judge assigned to the case. The judge or magistrate judge will then conduct a frivolity review as if the case were filed under 28 U.S.C. § 1915. If the judicial officer determines that the complaint is not frivolous, malicious, or intended to harass, then the judicial officer will allow the case to be filed and service to issue against the named defendants.

182 F.R.D. 661
182 F.R.D. 661
**(Cite as: 182 F.R.D. 661)**

The Constitution requires district courts to protect their jurisdiction "from conduct which impairs their ability to carry out Article III functions." *Procup,* 792 F.2d at 1073. These restrictions are necessary to protect the federal judicial system from further abusive and litigious behavior by defendant Barker and to ensure the continued effective functioning of the judiciary for those parties who have truly meritorious claims.

S.D.Ga.,1998.
U.S. v. Barker
182 F.R.D. 661

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

934 F.2d 326
934 F.2d 326, 1991 WL 94457 (C.A.10 (Kan.))
**(Cite as: 934 F.2d 326, 1991 WL 94457 (C.A.10 (Kan.)))**

Page 1

◄U.S. v. Kettler
C.A.10 (Kan.),1991.
NOTICE: THIS IS AN UNPUBLISHED
OPINION.(The Court's decision is referenced in a
"Table of Decisions Without Reported Opinions"
appearing in the Federal Reporter. Use FI CTA10
Rule 36.3 for rules regarding the citation of
unpublished opinions.)
    United States Court of Appeals, Tenth Circuit.
    UNITED STATES of America, Plaintiff-Appellee,
                            v.
Pat KETTLER, Register of Deeds, Sedgwick County,
                Kansas, Defendant,
    andRaymond J. VAN SKIVER and Alma L. Van
Skiver, Defendant-counter-claimants-Appellants.
                    **No. 91-3011.**

                    June 3, 1991.

D.Kan., No. 89-1598.
D.Kan.

AFFIRMED.

Before STEPHEN H. ANDERSON, TACHA and
BRORBY, Circuit Judges.

            ORDER AND JUDGMENT [FN*]

STEPHEN H. ANDERSON, Circuit Judge.
*1 After examining the briefs and appellate record,
this panel has determined unanimously that oral
argument would not materially assist the
determination of this appeal. SeeFed.R.App.P. 34(a);
10th Cir.R. 34.1.9. The cause is therefore ordered
submitted without oral argument.

Raymond Van Skiver appeals from an order of the
district court invalidating various notices he and Alma
Van Skiver filed with the Register of Deeds for
Sedgwick County, Kansas, and enjoining the Van
Skivers from filing such documents in the future and
from filing lawsuits against the United States without
prior leave of the court.

The Van Skivers do not want to pay federal taxes.
They allege, among other things, that they are not

subject to or within the jurisdiction of the United
States. In a supplemental filing in this court entitled
"Motion for Judicial Review, Motion for Relief from
Judgment," the Van Skivers embellish their argument
that they live within the territorial limits of the State of
Kansas and attempt to apply sections of the Uniform
Commercial Code to justify their actions. We grant
leave to proceed in forma pauperis, and dispose of this
appeal on the merits.

The Van Skivers appear to be sincere in their beliefs.
That is not the point. Their view of the Constitution
and laws has been rejected repeatedly by the courts,
both in cases relating directly to them, and in other
cases. See, for example, our opinions in Lonsdale v.
United States, 919 F.2d 1440 (10th Cir.1990), and
Christensen v. Ward, 916 F.2d 1462 (10th Cir.1990).
As we said in Lonsdale:

As the cited cases, as well as many others, have made
abundantly clear, the following arguments alluded to
by the [defendants] are completely lacking in legal
merit and patently frivolous: (1) individuals ("free
born, white, preamble, sovereign, natural, individual
common law 'de jure' citizens of a state, etc.") are not
"persons" subject to taxation under the Internal
Revenue code; (2) the authority of the United States is
confined to the District of Columbia; (3) the income
tax is a direct tax which is invalid absent
apportionment, and Pollock v. Farmers' Loan & Trust
Co., 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed.
759,modified,158 U.S. 601, 15 S.Ct. 912, 39 L.Ed.
1108 (1895), is authority for that and other arguments
against the government's power to impose income
taxes on individuals; (4) the Sixteenth Amendment to
the Constitution is either invalid or applies only to
corporations; (5) wages are not income; (6) the income
tax is voluntary; [and,] (7) no statutory authority exists
for imposing an income tax on individuals....

Lonsdale v. United States, 919 F.2d at 1448. In the
face of these numerous judicial announcements and
explanations, Mr. Van Skiver's present appeal with its
rehash of meritless arguments is frivolous. The order
of the district court is affirmed in all respects for the
reasons, and upon the authorities stated in, the district
court's patient and thorough memorandum order dated
December 13, 1990, a copy of which is attached hereto

934 F.2d 326
934 F.2d 326, 1991 WL 94457 (C.A.10 (Kan.))
**(Cite as: 934 F.2d 326, 1991 WL 94457 (C.A.10 (Kan.)))**

Page 2

and incorporated into this decision. The Motion for Judicial Review and Motion for Relief from Judgment are accepted as a supplemental brief. To the extent they are not disposed of by this opinion they are denied. The mandate shall issue forthwith.

ATTACHMENT

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF KANSAS

UNITED STATES OF AMERICA, Plaintiff,

v.

RAYMOND J. AND ALMA VAN SKIVER; AND PAT KETTLER, Register of Deeds, Sedgwick County, Kansas, Defendants.

Case No. 89-1598-C

Dec. 13, 1990

MEMORANDUM ORDER

CROW, District Judge.
**\*2** This matter comes before the court upon the United States' motion for summary judgment. The Government seeks an injunction to permanently enjoin Raymond J. and Alma L. Van Skiver (Van Skivers) from filing any lawsuits against any agency or employee of the United States concerning internal revenue laws without prior leave of the court. The Government also seeks an order invalidating various documents filed by the Van Skivers with the Register of Deeds, as well as a permanent injunction enjoining the Van Skivers from filing any similar documents with the Register of Deeds. The Government also seeks costs of this suit, including attorney's fees.

The Van Skivers' response is not a model of clarity. The Van Skivers apparently challenge the power of the United States to sue individuals. The Van Skivers also appear to challenge the power of this court to enter an order which would affect any individual. The Van Skivers also appear to assert the argument that declaring the documents they have filed with the Register of Deeds void in some way "amounts to a 1st

Amendment Right violation, Book-Burning!"

Facts

Over the past nine years, the Van Skivers have brought suit against the federal government in federal court on six occasions. A brief chronology of the Van Skivers' dealings with the I.R.S. and the federal courts best illustrates the Van Skivers' history:

1981: *Van Skiver v. Commissioner of Internal Revenue,* Case No. 81-1032. Van Skivers seek declaratory relief and an injunction against the assessment of taxes. The premise of their argument was that because the dollar is no longer backed by silver, they had not made "money" since 1965, only green paper. They also declared that the income tax scheme and collection process was arbitrary and unconstitutional. Judge Theis dismissed the complaint as frivolous and without merit.

1983: On March 1, 1983, Raymond Van Skiver signed and mailed the Internal Revenue Service a document titled "Public Office Money Certificate." The document, which is similar in appearance to a check, is payable in the amount of $197.54 to the United States for delinquent federal income taxes. The apparent implication from this document is that Van Skivers' worthless check is the equivalent of a federal reserve note.

*Van Skiver v. Treasure (sic) of the United States, et al.,* Case No. 83-1101. In this case the Van Skivers sued the Secretary of the Treasury, the United States Attorney General, and several Internal Revenue Service employees. The Van Skivers claimed that the 16th Amendment was unconstitutional, that income tax laws were vague and ambiguous, that income tax withholding is improper, that their tax debts were never assessed, and that they were denied a jury trial. This court dismissed the complaint as frivolous and without merit.

1984: On July 19, 1984, the Van Skivers signed and mailed documents to the Social Security Administration entitled "Notice of Revocation of Power." The documents purported to revoke the Van Skivers social security number. The apparent purpose of this document is premised on the idea that without a social security number there is no "contract" between the United States and the Van

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

934 F.2d 326
934 F.2d 326, 1991 WL 94457 (C.A.10 (Kan.))
**(Cite as: 934 F.2d 326, 1991 WL 94457 (C.A.10 (Kan.)))**

Page 3

Skivers under which they can be compelled to pay income taxes.

**\*3** 1985: On May 17, 1985, the Van Skivers mailed documents to the I.R.S. demanding that the I.R.S. "withdraw" certain notices of deficiency. The document begins with statement:

"DO NOT DISREGARD ANY PART OR PORTION OF THIS LETTER!!! READ AND UNDERSTAND EVERY WORD!!!

The document basically accused I.R.S.' employees of extortion and threatened I.R.S. employees with criminal and civil liability.

1986: On April 29, 1986, the Van Skivers filed a lawsuit captioned *Van Skiver v. Clarence King, et al.,* Case No. 86-1368-T. The complaint was brought as "an action AT LAW to bring Defendants to justice ..." The Van Skivers alleged that they were "FREE and Independent Natural Born [free born] Citizens ..." The Van Skivers also argued that because they had not entered any contract with the federal government, the federal government could have no claim against them.

On June 2, 1986, the Van Skivers filed a document titled "CONSTRUCTIVE NOTICE." In part, that document stated:

WARNING: This Court was "created" by Plaintiffs "Action At Law" and until the Common Law Struck Jury of Twelve (12) of "Plaintiffs" own "Peers" be assembled ... ONLY the Plaintiffs shall have STANDING within "their" Court. Plaintiffs will not grant any "creature of law" "leave of their Court" to inflict "equity" jurisdiction ..."

On June 6, 1986, the Van Skivers filed a document entitled "JUDICIAL NOTICE."

[A]n Imposter, John B. Wooley, having NO STANDING UNDER THE LAW ... came "disguised" "under a color of law" to assume an "equity" jurisdiction where Said "equity" is BARRED ... to enter upon THE RECORD an "order of equity" ... be VALID evidence of Mr. Wooley's "intent" to "step out of office" to

commit an UN-lawful TRESPASS upon Plaintiff's SUBSTANTIVE RIGHT to their AT LAW COURT ...

On July 22, 1986, Judge Theis dismissed Van Skivers' complaint in Case No. 86-1368-T.

On November 5, 1986, the Van Skivers filed a lawsuit titled *Van Skiver v. United States, et al,* Case No. 86-1882-C. In that case the Van Skivers brought suit against the United States, the Secretary of the Treasury, the District Director of the I.R.S., as well as several other federal and state government employees. The "Preliminary Statement" stated:

This is a class action for declaratory and injunctive relief to enjoin Defendants from seizing and/or liening properties of the NON-TAXPAYER ... to declare that NON-TAXPAYERS, in Plaintiff's class, are entitled to "DUE PROCESS" ... and should have been and must be informed as to exactly how the code of a de facto internal revenue service, as a "creature of law", applies to NON-TAXPAYERS; while acting within the bounds of their Natural Rights;

In Exhibit "C" the Van Skivers directed the United States Attorney for the District of Kansas to issue warrants of arrest for certain Internal Revenue Service employees.

**\*4** On January 23, 1987, this court dismissed the Van Skivers' complaint in Case No. 86-1882-C. The court denied the United States' motion for costs. The court stated, however, "being aware that plaintiffs have filed a similar action [in] the past, will not hesitate to grant such a motion in the future should plaintiffs raise identical issues in a subsequent suit."

1987: In January of 1987, the Van Skivers filed a lawsuit titled *Van Skiver v. United States,* Case No. 87-1040-K.

Judge Kelly noted that the Van Skivers' action was similar to Case No. 86-1882-C.

On January 30, 1987, Judge Kelly dismissed the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

934 F.2d 326
934 F.2d 326, 1991 WL 94457 (C.A.10 (Kan.))
(Cite as: 934 F.2d 326, 1991 WL 94457 (C.A.10 (Kan.)))

Page 4

complaint, concluding that "the contents of plaintiff's claims are wholly frivolous on their face and not deserving of response by way of answers from any of the defendants." Costs were assessed to the Van Skivers.

On October 15, 1987, Raymond Van Skiver signed and filed with the Register of Deeds for Sedgwick County a "Notice of Release of Federal Tax Lien by Automatic Action of Law," and other "Notices." One of the notices filed by Raymond Van Skiver is titled "Notice to President Reagan of the Commission of Treason." [FN1]

On October 15, 1987, Raymond Van Skiver signed and filed with the Register of Deeds of Sedgwick County a "Notice of Release of IRS Seizure by Automatic Action of Law," and other "Notices."

1988 On January 26, 1988, Raymond Van Skiver signed and filed with the Register of Deeds for Sedgwick County a "Notice & Nullification of Alleged Quitclaim Deeds by Automatic Action of Law," and other "Notices."

1989: On August 25, 1989, the Van Skivers filed a lawsuit titled *Van Skiver v. United States,* Case No. 89-1470-C. The complaint alleged a wrongful levy claim, an unauthorized disclosure claim, and a quiet title claim. On January 31, 1990, this court dismissed the Vankskivers' wrongful levy claim and dismissed in part the unauthorized disclosure claim.

On July 16, 1990, this court granted summary judgment in favor of the United States on the remaining claims.

On November 28, 1990, this court denied the Van Skivers' motion to reconsider.

Notices filed with the register of deeds.

As noted above, the Van Skivers have filed documents constituting various "notices" with the Sedgwick County Register of Deeds. The Government seeks an order declaring those records null and void and expunging those documents from the Register of Deeds records. Those "notices" apparently tend to cloud the title of the property. The Government also

seeks an injunction enjoining the Van Skivers from filing similar documents with the Sedgwick County Register of Deeds.[FN2]

The Van Skivers apparently only challenge the court's ability to issue such an order; they do not appear to challenge the facts that are alleged by the Government.[FN3] Because the Van Skivers do not appear to contest whether or not such an order is warranted in this case, the issue turns on whether this court has the authority to issue such an order.

*5 Generally, an injunction is appropriate when there exists no adequate remedy at law. Title 26 U.S.C. § 7402(a) authorizes district courts to issue injunctive and other relief to enforce internal revenue laws. The power given to the district court "encompasses a broad range of powers necessary to compel compliance with tax laws." *United States v. Ernst & Whinny,* 735 F.2d 1296, 1300 (11th Cir.1984). The power to invalidate the "notices" filed by the Van Skivers and to enjoin them from filing similar "notices" in the future appears to fall within the authority granted to this court. *See United States v. Kaun,* 633 F.Supp. 406, 408-409 (E.D.Wis.1986).

The ability of the federal court to declare documents filed with the state register of deeds invalid is not unprecedented. In *United States v. Hart,* 545 F.Supp. 470 (D.N.Dakota 1982), the United States and three employees of the I.R.S. brought suit seeking declaratory and injunctive relief arising out of documents which had been recorded by the register of deeds and indexed against the real estate holdings of I.R.S. employees. In granting the plaintiffs' motion for summary judgment, the district court declared the lien documents void and of no force or effect. 545 F.Supp. at 475.

The court concludes that the "notices" filed by the Van Skivers on the property at issue are null and void. The following named documents:

1. "Notice of Release of Federal Tax Lien by Automatic Action of Law," dated 10-14-87 and filed of record on 10-15-87 in the office of the Sedgwick County Register of Deeds at Film 925, Page 1422, Document No. 9 12522;

2. "Notice of Release of IRS Seizure by Automatic Action of Law," dated 10-14-87 and filed of record on

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

934 F.2d 326
934 F.2d 326, 1991 WL 94457 (C.A.10 (Kan.))
**(Cite as: 934 F.2d 326, 1991 WL 94457 (C.A.10 (Kan.)))**

Page 5

10-15-87 in the Office of the Sedgwick County Register of Deeds at Film 925, Page 1411, Document No. 9 12521;

3. "Notice & Nullification of Alleged Quitclaim Deeds by Automatic Action of Law," dated 1-26-88 in the office of the Sedgwick County Register of Deeds at Film 944, Page 1403, Document No. 9 28503;

are declared null and void and shall have no legal effect whatsoever.

The real property described as follows:

Lots 1-12, inclusive, Block B, Cedar Downs 3rd Addition to Sedgwick County, Kansas; and Lots 3-23, inclusive, Block C, Cedar Downs 3rd Addition to Sedgwick County, Kansas; and The W 330 Ft of the E 680 ft of the 660 ft of the SE 1/4 , Sec. 1, Twp. 27s, R 2 West of the 6th P.M., Sedgwick County, Kansas

is hereby relieved of and discharged from the effect, if any, of the filing of the documents described in the preceding paragraph.

The court, having concluded that it has the authority to issue injunctive relief, deems the issuance of an injunction appropriate. The Government should no longer be required to defend its right to property it has rightfully seized. Raymond J. and Alma Van Skiver are permanently enjoined from filing or attempting to file any additional "notices" or any other similar document affecting the above described property. Violation of this injunction by Raymond J. or Alma Van Skiver will constitute contempt.

Enjoining the Van Skivers from filing future claims against the United States or its agents.

**\*6** "[T]he right of access to the courts is neither absolute nor unconditional, ... and there is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious." *Tripati v. Beaman,* 878 F.2d 351, 353 (10th Cir.1989) (citations omitted). A district court has the authority "to enjoin litigants who abuse the court system by harassing their opponents. *Id.* at 352. The Supreme court recently noted:

Every paper filed with the Clerk of this Court, no

matter how repetitious or frivolous, requires some portion of the institution's limited resources. A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice.

*In re McDonald,* 489 U.S. 180, ----, 109 S.Ct. 993, 103 L.Ed.2d 158, 164 (1989).

"Litigiousness alone will not support an injunction restricting filing activities.... However, injunctions are proper where the litigant's abusive and lengthy history is properly set forth." *Tripati,* 878 F.2d at 353 (citations omitted). Some of the factors relevant in determining whether a litigant's future access to the courts should be restricted include: (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing litigation, e.g. does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties. *Safir v. United States Lines, Inc.,* 792 F.2d 19, 24 (2nd Cir.1986), *cert. denied,* 479 U.S. 1099 (1987). "Ultimately, the question the courts must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *id.*

Any restrictions imposed by the district court must be carefully tailored to the relevant circumstances with the goal of curbing the particular abusive behavior. *Tripati,* 878 F.2d at 352. Before an order restricting access is instituted, the litigant must be afforded notice and an opportunity to oppose it.

In *Bullard v. Home National Bank of Arkansas City,* Case No. 89-1199-C (D.Kan.1989), this court directed the plaintiff to show cause why the court should not enter an order imposing several conditions or restrictions upon future filings of suits in federal court. Bullard responded by filing more documents "utterly lacking in merit and substance." This court entered an order prohibiting Bullard from filing any future law suits in the United States District of Kansas without leave of this court.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

934 F.2d 326
934 F.2d 326, 1991 WL 94457 (C.A.10 (Kan.))
**(Cite as: 934 F.2d 326, 1991 WL 94457 (C.A.10 (Kan.)))**

Page 6

Restricting an individual's access to federal court to bring challenges against the I.R.S. or the internal revenue laws is not unprecedented in the Tenth Circuit. In *Ijams v. Bryan,* 79-2 U.S.T.C. ¶ 9629 (D.Kan.1979), Judge Rogers recounted the plaintiff's long history of filing absurd or incomprehensible documents. Judge Rogers referred to one document filed by the plaintiff as invoking "the 'stream of consciousness' principle of human perception and proceeds to use that principle as an organizational guide." The court granted injunctive relief and commented:

*7 The requested remedy is extraordinary indeed, for access to courts is an important and fundamental right. But as evidenced in the cases cited by defendant, when that right is so abused that the only result of repeated lawsuits filed by a pro se plaintiff is the harassment of government officials in pursuit of their lawful duties, extraordinary action may be necessary.

More recently, in *Christensen v. Ward,* 916 F.2d 1462, 1469 (10th Cir.1990), the court of appeals issued an order to show cause why sanctions against an individual who repeatedly challenged the federal government's ability to assess and collect taxes should not be imposed. After considering Christensen's response to the order to show cause, the court of appeals imposed the sanction of double costs, prohibited that individual from filing the same or similar allegations in the United States District Court for the District of Utah, and required a contribution of $500 to the Clerk of the United States Court of Appeals for the Tenth Circuit as a limited contribution to the United States for the cost and expenses of his cause of action. *Christensen v. Ward,* 916 F.2d 1485 (10th Cir.), *cert. denied,* 59 U.S.L.W. 3405 (1990).

In addition to the chronological history set out above, the Van Skivers' penchant for presenting frivolous, often nonsensical arguments to the court is demonstrated by the documents filed in this case. In paragraph # 78 of the Van Skivers' "ANSWER & COUNTERCLAIM," they state:

Van Skiver *DENIES* the plaintiff's complaint & argument, as unlike the counsel for the plaintiff, defendant Van Skiver has a Constitutionally secured right (above at 10. part a; & at 1. part a) to file even blatantly frivolous actions caused by lay ignorance of all the intricacies of legal procedure: and as many

times as he feels it necessary in order to protect himself, his family, & his property from the deprivations of alleged officers operating outside of the law & office in outlawry.

The Van Skivers' response to the Government's motion for summary judgment is another example of their legal analysis. The following are quotes from their response:

1. Plaintiff filed it "Civil" action to enjoin Defendant's 1st Amendment Right to make "frivolous pleading" which amount to no more than a "Redress of Grievances" prooly placed.

6. And to the adverse, Article III, Section 2, fails to mention that the judicial Powers shall extend to Controversies between the United States and Citizens. "It is the law that is under the jurisdiction of the federal Court, not the individual!" *Chisholm v. Georgia,* 1 L.Ed. (2 Dall) 418, 475 (1793). Therefore, individuals stand absolved of the judicial Power of the United States.

7. Additionally, Resolutions of the Congress can only equate to "jurisdictions" as are, in fact, delegated to the United States-all others are reserved to the States, or to the people respectively. Amendment 9 and 10.

8. Whereupon, Plaintiff seeks to make "Null and Void" a Kansas State Governmental Record titled "Nullification of Alleged Quit Claim Deed", without first proving that the contents thereon are, in fact interfering in with the revenue laws of the United States, or that Defendants reside with the exclusive jurisdiction of the United States Congress. To do so amounts to a 1st Amendment Right violation, Book-Burning!

*8 These arguments are wholly without merit. *See United States v. Fahey,* 614 F.2d 691 (10th Cir.1980) (taxpayers' argument that the United States is without authority to bring civil actions against citizens is frivolous). It is patently absurd to even suggest that federal courts have jurisdiction only over the "law" and not individuals. Van Skivers' argument that they are not individuals subject to internal revenue laws or the power of the court is equally preposterous. *See Lonsdale v. United States,* --- F.2d ----, ---- (10th Cir.1990) (collects arguments attacking the assessment or collection of taxes that completely lack

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

934 F.2d 326
934 F.2d 326, 1991 WL 94457 (C.A.10 (Kan.))
(Cite as: 934 F.2d 326, 1991 WL 94457 (C.A.10 (Kan.)))

Page 7

legal merit).

On November 15, 1990, the Van Skivers' filed a supplemental pleading in which they attempt to apply commercial law concepts to the issues of this case. (An identical pleading was filed on that same day in *Van Skiver v. United States,* Case No. 89-1470-C, another case then pending before this court.) In that document, the Van Skivers cite the Uniform Commercial Code, which generally deals with the sale of goods. The Van Skivers focus on § 2-302, which pertains to "unconscionability." Although the pleading was filed out of time, the court has reviewed that document. The crux of the Van Skivers' argument appears to turn on the Government's "unconscionable act" of issuing a Social Security number to an "under-aged-youth." The convoluted, "stream of consciousness" arguments raised by the Van Skivers in the supplemental pleading are virtually unintelligible, frivolous, misapply the law, or do not address issues relevant to this case. A copy of that pleading is attached to this order.

It is apparent from the numerous documents filed by the Van Skivers that they have access to the Internal Revenue Code, federal and regional reporters and treatises. Unfortunately, the unique, and often unintelligible interpretations of the law have required the Government, this court and other courts in this district to spend several hours wading through the myriad of documents filed by the Van Skivers. The Van Skivers also have demonstrated a penchant for revisiting, albeit in somewhat different forms, arguments previously dismissed by the courts. Perhaps most disturbing is the fact that the Van Skivers are unwilling to accept, or for that matter even acknowledge, unchallenged and well-established precedent in direct conflict with the arguments they wish to advance. While the Van Skivers' perseverance cannot be denied, their continual, frivolous harassment of Government employees and waste of the court's resources rehashing the same arguments must end.

Over the past nine years the Van Skivers have persisted in bringing frivolous suits and harassing I.R.S. employees with unenforceable threats of civil and criminal sanctions. Obviously, filing fee costs nor the threat of or imposition of costs have not imposed a sufficient obstacle to the litigious Van Skivers. The Van Skivers are apparently undaunted by the amount of time, energy, and resources necessary to prosecute or defend a lawsuit.

*9 In order to protect the Government from unnecessary harassment and to preserve the resources of the court, the court proposes to enter the following order:

1. The defendant, Raymond J. and Alma Van Skiver, individually or in unison, are precluded from filing any new actions in the United States District Court for the District of Kansas against the United States, any agency of the United States, or any officer or employee of the United States, that contain the same or similar arguments or allegations as set forth in their answer and other pleadings in the case at bar (including any direct or indirect challenge to the previous court proceedings or judgments), without obtaining leave of this court. The requirement of leave of the court is deemed to be a condition precedent to the commencement of any legal action against the United States or its agents brought by the Van Skivers in this court. The Van Skivers' failure to seek leave constitutes grounds for the immediate dismissal of the action.

2. In seeking the court's leave, the Van Skivers must comply with the following requirements:

(a) The Van Skivers must file a "Motion Pursuant to Court Order Seeking Leave to File" and attach thereto a copy of their proposed complaint.

(b) As an exhibit, the Van Skivers must attach a declaration under penalty of perjury prepared pursuant to 28 U.S.C. § 1746 or a sworn affidavit certifying that (1) their claims are not claims that have been previously asserted and/or involve issues previously litigated and resolved; (2) that their claims are not frivolous or made in bad faith.

(c) As a second exhibit to that motion, the Van Skivers, will attach a copy of this order filed today.

(d) As a third exhibit to that motion, the Van Skivers must identify and list: (1) the full caption of each and every suit which has been previously filed by them or on their behalf in any court against each and every defendant named in the suit that they wish to file, and (2) the full caption of each and every suit which they

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

934 F.2d 326
934 F.2d 326, 1991 WL 94457 (C.A.10 (Kan.))
**(Cite as: 934 F.2d 326, 1991 WL 94457 (C.A.10 (Kan.)))**

Page 8

have currently pending.

(e) As a fourth exhibit to that motion, the Van Skivers must provide a copy of each complaint filed in the suits identified in (d)(1) above.

3. If and when leave is granted to file their proposed complaint, a copy of this order will be attached to their complaint and served on the defendants.

The court retains the authority to modify this injunction as circumstances warrant.

The notice and opportunity requirement set forth in the *Tripati* decision does not necessitate an in-person hearing before the district court. *878 F.2d at 354.* The Van Skivers are hereby given twenty days from the filing date of this order to file with this court their written reasons opposing the above proposed restrictions on their ability to bring suit against the United States or its agents. The Government may also file its respective position within this same time period.

Van Skivers' counterclaim.

On January 18, 1990, the Van Skivers filed a document titled "ANSWER & COUNTERCLAIM." In that twenty-eight page document, the Van Skivers advance several arguments challenging the constitutionality of the Government's requested relief. The Van Skivers also asserted a "counterclaim" against the Government. The Government, in a two paragraph response, denied "any statements contained in defendants' answer and counterclaim ... that can be construed as a counterclaim ..." The Government requested that the counterclaim be dismissed with prejudice.

**\*10** The court has reviewed the "ANSWER & COUNTERCLAIM" filed by the Van Skivers. The substance of the Van Skivers' "counterclaim" appears to only request denial of the Government's claims and an award of costs, including attorney's fees, in their favor. Therefore, the Van Skivers' "counterclaim" is disposed of by the fact that the Government is entitled to summary judgment.

IT IS THEREFORE ORDERED that the "notices" filed by the Van Skivers ("Notice of Release of

Federal Tax Lien by Automatic Action of Law," Document No. 9 12522; "Notice of Release of IRS Seizure by Automatic Action of Law," Document No. 9 12521; "Notice & Nullification of Alleged Quitclaim Deeds by Automatic Action of Law," Document No. 9 28503) are declared null and void. The real property, as described above, is relieved of and discharged from the effect, if any, of those "notices." Raymond J. and Alma Van Skiver are permanently enjoined from filing or attempting to file any additional "notices" or any other similar document affecting the above described property.

The Government's request for costs, including attorney's fees, is denied. In the event that the Van Skivers unnecessarily harass the Government in the future, the court will not hesitate to award costs.

IT IS FURTHER ORDERED that the Van Skivers' "counterclaim" is dismissed with prejudice.

IT IS FURTHER ORDERED that the Raymond J. and Alma Van Skiver and the Government are hereby provided twenty days from the filing date of this order to submit their positions on the proposed order restricting the Van Skivers' ability to file future lawsuits against the United States or its agents in federal court only upon obtaining leave of the court.

> FN* This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3.

> FN1. Each of the notices filed by the Vanskivers advance untenable interpretations of the law. The notices apparently pertain to property sold by the I.R.S. pursuant to 26 U.S.C. § 6335 and quitclaim deeds issued pursuant to 26 U.S.C. § 6338.

> FN2. The Register of Deeds does not challenge the court's authority to declare the "notices" invalid.

> FN3. The Vanskivers do challenge the Government's ability to bring a suit against

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

934 F.2d 326
934 F.2d 326, 1991 WL 94457 (C.A.10 (Kan.))
**(Cite as: 934 F.2d 326, 1991 WL 94457 (C.A.10 (Kan.)))**

individuals as well as the court's jurisdiction over individuals. These arguments are discussed below.

C.A.10 (Kan.),1991.

U.S. v. Kettler

934 F.2d 326, 1991 WL 94457 (C.A.10 (Kan.))

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

53 F.3d 1170
53 F.3d 1170
(Cite as: 53 F.3d 1170)

Page 1

▷U.S. v. Mckinley
C.A.10 (Wyo.),1995.

United States Court of Appeals,Tenth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
E. Lavay McKINLEY, Defendant-Appellant.
Nos. 93-8075, 93-8111.

May 2, 1995.

Criminal defendant filed liens purporting to encumber property of prosecutor and presiding judge, alleging, as sole basis for liability, civil rights violations committed by them during his criminal prosecution. The United States sought to have liens declared null, void, and of no legal effect, and to enjoin defendant from imposing similar liens. The United States District Court for the District of Wyoming granted summary judgment for United States, and defendant appealed. The Court of Appeals, McKay, Circuit Judge, held that prosecutor and judge were entitled to summary relief, since they were absolutely immune from damages liability for actions in performance of their prosecutorial and judicial duties.

Affirmed.

Baldock, Circuit Judge, concurred in result.

West Headnotes

[1] Civil Rights 78 ☞1376(8)

78 Civil Rights
    78III Federal Remedies in General
        78k1372 Privilege or Immunity; Good Faith and Probable Cause
        78k1376 Government Agencies and Officers
            78k1376(8) k. Judges, Courts, and Judicial Officers. Most Cited Cases
        (Formerly 78k214(8))

Civil Rights 78 ☞1376(9)

78 Civil Rights
    78III Federal Remedies in General
        78k1372 Privilege or Immunity; Good Faith and Probable Cause
        78k1376 Government Agencies and Officers
            78k1376(9) k. Attorney General and Prosecuting Attorneys. Most Cited Cases
        (Formerly 78k214(9))
Lien documents filed by criminal defendant against prosecutor and trial judge alleging as sole basis for pecuniary liability civil rights violations committed by them during defendant's criminal prosecution failed as matter of law; regardless of merits of allegations, prosecutor and judge had absolute immunity from damages liability for performance of their duties.

[2] District and Prosecuting Attorneys 131 ☞10

131 District and Prosecuting Attorneys
    131k10 k. Liabilities for Official Acts, Negligence, or Misconduct. Most Cited Cases

Judges 227 ☞36

227 Judges
    227III Rights, Powers, Duties, and Liabilities
        227k36 k. Liabilities for Official Acts. Most Cited Cases
Federal judges and prosecutors are absolutely immune from damages liability under federal or state law for actions taken in performance of judicial or prosecutorial duties.

*1171 Submitted on the briefs: FN*

    FN* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. SeeFed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

E. LaVay McKinley, Littleton, CO, pro se.
David D. Freudenthal, U.S. Atty., and Donald R. Wrobetz, Asst. U.S. Atty., D. of Wyoming, Cheyenne, WY, for plaintiff-appellee.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

53 F.3d 1170
53 F.3d 1170                                                                                  Page 2
**(Cite as: 53 F.3d 1170)**

Before SEYMOUR, Chief Judge, McKAY and BALDOCK, Circuit Judges.

McKAY, Circuit Judge.
Mr. McKinley, facing criminal prosecution in Wyoming, undertook counter-measures that were (and are) apparently unprecedented in the annals of traditional criminal law. Mr. McKinley filed with the County Clerk of Laramie County, Wyoming, a self-styled "Commercial Just Compensation Customer's Lien" purporting to encumber the property of Mr. Richard Stacy and the Honorable Clarence Brimmer, respectively the prosecuting U.S. Attorney and the presiding judge in his criminal case. While it is a task of no slight difficulty to draw from these documents a cognizable legal basis for the liens, Mr. McKinley apparently intended to secure the assets of Mr. Stacy and Judge Brimmer in contemplation of a planned civil rights action against them.

Shortly thereafter, the United States commenced this suit to have the liens declared "null, void, and of no legal effect" and to enjoin Mr. McKinley from imposing similar liens upon the personal property of government officials. The district court granted the United States summary judgment with respect to all requested relief. Mr. McKinley now appeals to this court to reverse this judgment.

[1][2] To read these documents (the full texts of which are set out in the margin) FN1 is *1172 to recognize the fundamental frivolity of the legal tenets espoused therein. We are not familiar with a citizen-customer's authority to exact a consensual commercial lien from a public official, FN2 but it is a power that has no mooring in either federal or state law. The liens, in any event, purport to secure assets to which Mr. McKinley would have no legal claim even were his civil rights action to succeed. Federal judges and prosecutors are *absolutely* immune from damages liability under federal or state law for actions taken in performance of judicial or prosecutorial duties. *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Van Sickle v. Holloway,* 791 F.2d 1431, 1435-36 (10th Cir.1986); *Martinez v. Winner,* 771 F.2d 424, 434-38 (10th Cir.), modified in part on other grounds, reh'g denied in part, 778 F.2d 553 (10th Cir.1985), vacated sub nom. on other grounds, *Tyus v. Martinez,* 475 U.S. 1138, 106 S.Ct. 1787, 90 L.Ed.2d

333 (1986). The lien documents filed by Mr. McKinley allege, as the sole basis for pecuniary liability, civil rights violations committed by Judge Brimmer and U.S. Attorney Stacy during Mr. McKinley's criminal prosecution. Irrespective of the merits of Mr. McKinley's allegations, therefore, his claims for damages and, hence, the liens themselves fail as a matter of law. See *Hunt v. Bennett,* 17 F.3d 1263, 1266-67 (10th Cir.), cert. denied, 513 U.S. 832, 115 S.Ct. 107, 130 L.Ed.2d 55 (1994). Mr. Stacy and Judge Brimmer are therefore plainly entitled to summary relief.

> FN1. The form of the lien imposed upon U.S. Attorney Stacy's property is as follows:
>
> 1. I, the above cited lien claimant, have an interest in all property and rights to property belonging to Richard A. Stacy. I have an interest in Just Compensation which you are obligated to guarantee. The liens which are filed against you are commercial liens to secure Just Compensation.
>
> 2. You are my public servant, and I am your citizen-customer, and pursuant to the Equal Protection of the law I have the commercial power to enforce your specific performance (oath of office) with a Commercial Just Compensation Customer's Lien, called a specific performance lien, guaranteed specifically and expressly by the Fifth Amendment to the U.S. Constitution, regarding Just Compensation.
>
> 3. Your relationship to me as a public servant, and your oath of office, give me the consent to file consensual commercial liens against you if and when I find that necessary in order to secure Just Compensation in return for my support of you and your office.
>
> 4. Your oath of office and your consequent public responsibility as a public servant, when violated by you, are my commercial authority to file a Just Compensation Lien against you.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

5. You have violated your oath of office and/or your consequent public responsibilities as follows:

A. Has failed to inform me of the true nature and cause of the accusation; that I am in fact being tried under criminal aspects of Admiralty-Maritime Law under an International Contract of Bankruptcy to which I was never a signatory and has failed to produce any foundation instrument bearing my signature.

B. Has violated my Eight Amendment (U.S. Constitution) rights by blocking my attempts to get reasonable bail set.

C. has conspired with other perosns (sic) and agents of the U.S. Government and teh (sic) State of Wyoming in the unlawful entrapment, kidnapping, and incarceration of E. LaVay McKinley a Non-Resident Alien to the federal corporate bankrupt United States.

6. Therefore, I have done what any law abiding Citizen must do (42 USC sec 1986) namely, summoned the courage to seize your property with a Fifth Amendment U.S. Constitutional Consensual Commerial (sic) Lien for just Compensation.

7. You are being assessed damages at the rate of $25,000.000 per day, commencing on the 21st day of October, 1992, and continuing each day until E. LaVay McKinley's release from incarceration, which is three times the amount of injury permitted per the R.I.C.O. laws.

8. You will comply with your oath of office and rectify the lien claimant's problem, or you will lose your property.

9. Any attempt by any judge, attorney, or county recorder of any city, county, state, or U.S. government to refuse the filing of, or the attempt of removal of, any valid consensual commercial lien(s) will establish the commercial precedent necessary to invalidate the corresponding power of the city, county, state or U.S. governments to impose commercial tax liens. COMMERCIAL ADVERSARIES BEWARE!

The lien imposed upon the property of Judge Brimmer differs only in the recitation of charges against him:

5. You have violated your oath of office and/or your consequent public responsibilities as follows:

A. Has failed to inform me of the true nature and cause of the accusation; that I am in fact being tried under criminal aspects of Admiralty-Maritime Law under an International Contract of Bankruptcy to which I was never a signatory, and has failed to produce any foundation instrument bearing my signature.

B. Has repeatedly denied me the right to have the assistance of competent counsel of choice (non barnumber) and forced upon me court-appointed counsel who is entering motions in my behalf against my express will, in violation of the Sixth Amendment of the U.S. Constitution.

C. Has violated my eight (sic) Amendment rights by refusing to set reasonable bail.

D. Has denied me the right to a speedy trial, also in violation of the Sixth Amendment.

FN2. We are, in any event, at a loss to comprehend how Mr. McKinley, a self-proclaimed "Non-Resident Alien to the federal corporate bankrupt United States," can claim the hypothetical powers of a "citizen-customer."

We therefore AFFIRM the decision of the district court to release the liens. We likewise AFFIRM the district court's order enjoining Mr. McKinley from

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

53 F.3d 1170
53 F.3d 1170
**(Cite as: 53 F.3d 1170)**

Page 4

filing similar liens or encumbrances against the property of government officials in the future. *Compare* *United States v. Ekblad,* 732 F.2d 562 (7th Cir.1984).

We grant the government's request for sanctions on appeal and remand to the trial court for it to determine the proper amount.[FN3]

> FN3. We grant Defendant-Appellant's motion for leave to proceed in forma pauperis.

AFFIRMED AND REMANDED.

BALDOCK, Circuit Judge, concurs in the result only.
C.A.10 (Wyo.),1995.
U.S. v. McKinley
53 F.3d 1170

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.